IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JUDITH A. NEELLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-CV-269-WKW |
| | ) | [WO] |
| CLIFFORD WALKER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case presents allegations that the Alabama Legislature overstepped its bounds by amending a state statute to ensure that Plaintiff Judith A. Neelley, a former death-row inmate whose sentence was commuted to life imprisonment, would never become eligible for parole consideration.  Plaintiff sues the current members of the Alabama Board of Pardons and Paroles – Clifford Walker, William W. Wynne, Jr., and Robert P. Longshore – the officials required to apply Alabama's allegedly unconstitutional law against her.  Before the court is their motion to dismiss, (Doc. # 18), which has been fully briefed, (Docs. # 20, 21).  Upon consideration of Plaintiff's amended complaint, the parties' arguments, and the relevant law, the court finds that the motion to dismiss is due to be granted in part and denied in part.

## I.  JURISDICTION AND VENUE

Except as noted *infra* at Part IV.A., the court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject-matter jurisdiction.  *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  On a Rule 12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject-matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review.  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal quotation marks omitted).

## III. BACKGROUND

### A.   <u>Facts</u>

On March 22, 1983, Plaintiff was convicted of first-degree murder in the Circuit Court of DeKalb County, Alabama.  Despite a jury's 10-2 recommendation that Plaintiff be sentenced to life imprisonment without the possibility of parole, the trial judge sentenced Plaintiff to death.  Plaintiff exhausted all of her state and federal remedies for challenging her death sentence.  On January 15, 1999, four days after the U.S. Supreme Court denied Plaintiff's last petition for writ of certiorari, *see Neelley v. Nagle*, 525 U.S. 1075 (1999), Governor Fob James, as one of his final official acts before leaving the governorship, notified the Alabama Supreme Court that he commuted Plaintiff's death sentence to "life imprisonment." (Doc. # 1-1 ("Pursuant to the authority granted to me by virtue of Amendment No. 38, Constitution of Alabama, I [Governor Fob James, Jr.] hereby commute the

sentence of death of Judith Ann Neel[l]ey to life imprisonment.").)   Plaintiff represents that no Alabama governor had commuted a death sentence since 1962.

At the time of the commutation, Alabama law provided that "[a]ny person whose sentence to death has been commuted by the Governor to life imprisonment shall not be eligible for a parole from the Board of Pardons and Paroles until he shall have served at least [fifteen] years of such life sentence, and any parole granted contrary to the provisions of the section shall be void."  Ala. Code § 15-22-27(b) (1975).  However, Alabama law also provided that a person convicted of a capital offense must be sentenced to either "life imprisonment without parole or to death."  Ala. Code § 13A-5-39 (1975).

Perplexed, Defendants' predecessor members of the Alabama Board of Pardons and Paroles ("the Board") inquired of the Alabama Attorney General whether, in view of § 13A-5-39, Governor James had the authority to commute Plaintiff's sentence to life imprisonment as opposed to life imprisonment without parole.  Attorney General Bill Pryor responded that the Governor in fact had that authority.  (*See* Doc. # 1-2, at 9.)  Assuming that parole was a possibility for Plaintiff, the Board Members also asked whether Plaintiff had to serve fifteen years from the date her sentence was commuted, or whether her time served under the death sentence was adequate.  The Attorney General advised that Plaintiff would

not be eligible for parole until she had served at least fifteen years of the commuted life sentence.  (Doc. # 1-2, at 11.)

On March 8, 1999, the Board notified Plaintiff that her case would be considered for parole in January 2014, fifteen years from the date that Governor James commuted her sentence.  On October 1, 2001, counsel for Plaintiff requested that the Board provide Plaintiff with an initial parole consideration hearing.  The Board responded by reiterating its stance that Plaintiff would not become eligible for parole consideration until January 2014.

On October 23, 2001, Plaintiff filed a suit for declaratory relief in the Circuit Court of Montgomery County, Alabama, asking the court to adjudge her immediately eligible for parole consideration because she had already served nineteen years in prison, including sixteen-plus years as a death row inmate.  The Circuit Court of Montgomery County denied her request for relief and held that, pursuant to § 15-22-27(b), Plaintiff would remain ineligible for parole consideration until she had served fifteen years of her commuted sentence.[1]

On June 18, 2003, the Alabama Legislature passed Act 2003-300 ("the Act"), which amended § 15-22-27(b) to provide that "[a]ny person whose sentence to death has been commuted by the Governor *shall not be eligible for a parole*." (emphasis added).  The Act also amended the statute to require that "[a]ny person

---

[1] The court is unaware of whether that decision was appealed.

whose sentence to death has been commuted by the Governor" remains ineligible for a grant of parole "unless sufficient evidence is presented to the Board of Pardons and Paroles to satisfy it that the person was innocent of the crime for which he or she was convicted, the board votes unanimously to grant the person" parole, and "the Governor concurs in and approves the granting" of parole.  Ala. Code § 15-22-27(d) (incorporating by reference § 15-22-27(a)).  The Legislature specifically made the Act "retroactive to September 1, 1998."  Ala. Acts 2003-300, § 3 (S.B. 49).   Plaintiff alleges that the "sponsor and supporters of the legislation that became [the Act] expressly indicated that the amendment was intended to 'fix' Governor James's commutation of [Plaintiff's] death sentence and even referred to it as 'Neelley's law.'"  (Am. Compl. at ¶ 15.)  Plaintiff's brief cites media reports from 2002 and 2003 to the same effect.  (*See* Doc. # 20, at 21–22.)  There is no allegation in the amended complaint that Plaintiff herself was aware of the passage of the Act or its retroactive effect on her case.

In January 2014, when Plaintiff reached the fifteenth anniversary of Governor James's commutation of her sentence, her counsel requested that Defendants, the current members of the Board, provide Plaintiff with a parole consideration hearing.  Defendants, like their predecessors, looked to the Attorney General's Office for guidance.  On March 31, 2014, the current Attorney General issued an advisory opinion that Plaintiff is ineligible for parole consideration

because of the retroactive application of the Act amending § 15-22-27.  Defendants informed Plaintiff that she was barred from parole consideration, and Plaintiff represents that they have continued to deny her an initial parole hearing.

## B.   **Procedural History**

Plaintiff filed this suit on April 10, 2014.  The original complaint named the Board, as opposed to its individual members, as the defendant.  The Board moved to dismiss the complaint, and Plaintiff filed an amended complaint naming the current Board Members as Defendants.  On May 12, 2014, the court denied the motion to dismiss the original complaint as moot.  (Doc. # 16.)

Plaintiff's amended complaint alleges that the retroactive effect of the Act, as applied to her, is in violation of (1) the *Ex Post Facto* Clauses of the United States and Alabama Constitutions; (2) the United States Constitution's Bills of Attainder Clause; and (3) Sections 42 and 43 of the Alabama Constitution, which provide for the separation of powers among three branches of state government.[2] Plaintiff brings her claims pursuant to 42 U.S.C. § 1983 and seeks declaratory and permanent injunctive relief.  Defendants argue that the amended complaint is due to be dismissed in its entirety.

---

[2] Like the State legislatures, Congress is also constitutionally barred from passing Bills of Attainder and *ex post facto* laws.  U.S. Const. art. I, § 9, cl. 3.  Unless indicated otherwise, all references in this opinion to the *Ex Post Facto* and Bill of Attainder Clauses are to the clauses applicable to the States in Article I, Section 10 of the United States Constitution.

# IV.  DISCUSSION

## A.    State-Law Claims

Defendants assert Plaintiff's suit for declaratory and injunctive relief, as it pertains to the constitutionality of the Act under the Alabama Constitution, is barred by the Eleventh Amendment.  The Eleventh Amendment requires that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "Though by its plain terms the Eleventh Amendment only precludes federal courts from entertaining suits against a state brought by citizens of another state, it has been construed to bar suits against a state brought by that state's own citizens as well."  *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001).

Although Defendants may be sued in their official capacities for prospective injunctive relief for alleged violations of federal law, *see Beasley v. Ala. State Univ.*, 3 F. Supp. 2d 1304, 1307 (M.D. Ala. 1998) (citing *Ex Parte Young*, 209 U.S. 123 (1908)), Defendants are not subject to suit in federal court for prospective injunctive relief for alleged violations of the Alabama Constitution.   As the Supreme Court has explained, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform

8

their conduct to state law.  Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  A federal court thus lacks subject-matter jurisdiction to hear any claim barred by the Eleventh Amendment.  *McLendon*, 261 F.3d at 1256.

Plaintiff responds that Defendants' argument is "well-taken," and admits that Count Three of her amended complaint "should be dismissed without prejudice to her ability to pursue that claim in state court."  (Doc. # 20, at 3 n.1.) Defendants reply that Plaintiff fails to acknowledge "that the rest of [the pleading] is peppered with references to Alabama constitutional provisions and case law," and that Count One specifically cites the Alabama Constitution as a legal basis for relief.  (Doc. # 21, at 1.)  It is not problematic that Plaintiff cites Alabama law to dress the stage for her federal constitutional claims, but the court agrees that it lacks subject-matter jurisdiction over Plaintiff's request for declaratory and injunctive relief related to the lawfulness of the Act, as applied to Plaintiff, under the Alabama Constitution.  Hence, Count One, to the extent that it relies upon Article I, § 22 of the Alabama Constitution, which prohibits the passage of *ex post facto* laws, and Count Three, in its entirety, are due to be dismissed without prejudice for lack of subject-matter jurisdiction.

**B.**   **Federal-Law Claims**

Defendants assert two grounds for dismissal of the federal-law claims pursuant to Rule 12(b)(6):  first, the claims are barred by § 1983's two-year statute of limitations; and second, Plaintiff fails to state federal-law claims upon which relief can be granted.  Each argument is addressed in turn.

**1.**   ***Statute of Limitations Defense***

Defendants argue that Plaintiff's constitutional injuries accrued on the date the Act was made effective – September 1, 2003.  Thus, Defendants assert that Plaintiff's § 1983 action must have been brought within two years of September 1, 2003, in order to satisfy the two-year statute of limitations.  *See McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) ("All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." (citing the two-year statute of limitations set out in Ala. Code § 6-2-38)).  "Generally, the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003).  Defendants suggest that Plaintiff knew or should have known of her right to assert her federal-law claims in 2003, when the Legislature passed the Act amending § 15-22-27.

Plaintiff counters that "Defendants do not offer any argument or authority to support their assertion that the mere passage of [the Act in 2003], without more, provided [her] with sufficient facts to make it apparent that her Constitutional rights had been violated."  (Doc. # 20, at 5.)  Plaintiff points out her allegations that she was repeatedly informed by the Board and the Montgomery County Circuit Court that she remained legally ineligible for parole consideration until January 2014.  (*See* Am. Compl. at ¶¶ 9, 10, 12.)  She emphasizes that her federal constitutional claims are as-applied challenges to the Act, as opposed to facial challenges, and thus, they "did not accrue until 2014 when the Defendants applied the Act retroactively to deny [her] request for parole consideration."  (Doc. # 20, at 8; *see also* Doc. # 20, at 10.)

Defendants reply that Plaintiff "seeks to escape application of the two-year statute of limitations by shifting responsibility for the retroactive application of [the Act] from the Alabama Legislature to the Defendants" who "lack discretion to contradict th[e] mandate" of the Legislature.   (Doc. # 21, at 2, 4.)   Lest Defendants' argument create any confusion, there is no dispute that the members of the Board are the proper parties in this suit.  Rather, Defendants' position is that Plaintiff's grievance is really with a decision of the Legislature many years ago – not with Defendants' recent denial of Plaintiff's request comporting with the terms of the Act.  In other words, the Act was made retroactively applicable to Plaintiff

upon its passage in 2003 – not upon Defendants' denial of her request for parole consideration in 2014.   Defendants' reply further asserts that Eleventh Circuit precedents stand for the proposition that "a procedural change which renders an inmate ineligible for parole triggers the running of the applicable statute of limitations."   (Doc. # 21, at 3 (citing *McNair*, 515 F.3d at 1174–75).)

But that is not precisely what Eleventh Circuit authorities instruct.   The standard is that the statute of limitations begins to run once "the facts which support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights" – not when the rules concerning a plaintiff's parole eligibility change.   *Lovett*, 327 F.3d at 1182; *see also McNair*, 515 F.3d at 1174–75; *Porter v. Ray*, 461 F.3d 1315, 1323 (11th Cir. 2006); *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003).

In *Lovett*, the court held that the plaintiff knew or should have known of his cause of action at the time he was notified that he would not be reconsidered for parole until a certain date.   327 F.3d at 1182.   And in *Brown*, the court held that the plaintiff's "injury, to the extent it ever existed, was when the Georgia Parole Board *applied* its new [parole consideration] policy" to the plaintiff.   335 F.3d. at 1261–62.   (emphasis added).   At that point, the Circuit reasoned, the plaintiff "could have discovered the factual predicate of his [*ex post facto*] claim."   *Id.* at 1262.

Plaintiff's brief emphasizes the holding in *Brown*; Defendants have not attempted to distinguish it in their reply.

When determining whether facts were apparent or should have been apparent to a plaintiff to justify the running of the statute of limitations, a court may "impute[ to the plaintiff] constructive, rather than actual, knowledge" of the alleged constitutional violation. *Williams v. City of Tampa Police Dep't*, 216 F. App'x 915, 916 (11th Cir. 2007). But in view of *Lovett* and *Brown*, it is improper to impute knowledge of Plaintiff's federal-law claims to her when there is no allegation in her amended complaint that the Board informed her, prior to 2014, that it would apply the Act retroactively to her. For this reason, it is not apparent from the face of Plaintiff's pleading that her federal-law claims are time-barred, *see La Grasta*, 358 F.3d at 845, and Defendants' motion to dismiss based on the running of the statute of limitations is due to be denied.[3][4]

---

[3] As an aside, Plaintiff proposes in a footnote that, if she had filed this suit within two years of the Act's passage in 2003, as Defendants assert she should have, Defendants (or their predecessors) would have opposed the suit as unripe because Plaintiff was, at that time, ineligible for parole consideration and had yet to request parole consideration. (Doc. # 20, at 5 n.2.) Her proposal is not far-fetched, but the court will not speculate as to what Defendants might have argued if pressed to defend the Act between 2003 and 2005, or how that hypothetical scenario might impact Defendants' arguments today.

[4] Plaintiff argues alternatively that the statute of limitations is subject to equitable tolling. Just as Alabama's statute of limitations applies to Plaintiff's § 1983 claims, so also Alabama's rules for equitable tolling apply. *See Wallace v. Kato*, 549 U.S. 384, 394 (2007). The Supreme Court of Alabama has held that a person seeking to equitably toll a statute of limitations must establish "(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way as to the filing of h[er] action." *Weaver v. Firestone*, ___ So. 3d ____, 2013 WL 6516389, at *4 (Ala. 2013); *cf. Sandvik v. United States*, 177 F.3d 1269, 1271

Defendants are skeptical that Plaintiff was without actual knowledge of the Act's retroactive application to her considering the ample media coverage given to both Governor James's commutation of her sentence and the Legislature's reaction to "fix" the unpopular possibility that Plaintiff might obtain parole.  (*See* Doc. # 21, at 6 n.2; *see also* Am. Compl. at ¶ 15.)  The evidence to be discovered in this case may later support Defendants' assertion that Plaintiff neglected to timely act upon long-apparent facts supporting her claims, but at the 12(b)(6) stage, the court considers the amended complaint's allegations alone.

### 2.    *Failure to State Federal-Law Claims*

Defendants argue that Plaintiff's amended complaint fails to state valid claims that the application of the Act violates the United States Constitution's *Ex Post Facto* and Bill of Attainder Clauses.

### a.    *Ex Post Facto* **Clause**

The Constitution prohibits the States from passing *ex post facto* laws.  U.S. Const. art. I, § 10.  "To fall within the *ex post facto* prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' –

---

(11th Cir. 1999) ("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond h[er] control and unavoidable even with diligence.").  Defendants argue that Plaintiff's ignorance of the law (specifically, the Act and its retroactive effect) is not an extraordinary circumstance warranting tolling.  A court assessing equitable tolling should engage in a fact-specific inquiry, *see Weaver*, at *5, and the only facts before this court are those alleged in the amended complaint.  The court makes no finding as to whether the statute of limitations should be equitably tolled for Plaintiff, assuming the statute of limitations has run.

and it 'must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981)) (internal citation omitted). There appears to be no dispute that the Act in this case is retrospective. What is contested is whether the Act impermissibly increases Plaintiff's punishment. Defendants claim that the Act is not punitive, but even if it were, Plaintiff's current punishment pursuant to the Act (life imprisonment without parole) was a punishment "annexed" to the crime at the time that Plaintiff committed first-degree murder. (Doc. # 18, at ¶ 10.) Hence, Defendants assert that the Act is not "more onerous than the law in effect on the date of [Plaintiff's criminal] offense." *Weaver v. Graham*, 450 U.S. 24, 30–31 (1981).

Plaintiff responds that an increased sentence from life imprisonment with the possibility of parole to life imprisonment without the possibility of parole is indeed "punitive." She notes, among other authorities, the Supreme Court's dicta in *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 663 (1974), that "only an unusual prisoner could be expected to think that he was not suffering a penalty when he was denied eligibility for parole," and that the repeal "of parole eligibility previously available to imprisoned offenders would clearly [implicate] the ex post facto clause" applicable to Congress in Article I, Section 9. (*See* Doc. # 20, at 14–17.) In the absence of any authority from Defendants to support their contention

that the Act is not punitive, the court concludes for purposes of the instant motion to dismiss, that the legislative adjustment of a sentence to remove the possibility of parole is in fact punitive in nature.

Plaintiff further argues that it makes no difference that she was not, as a capital offender, parole-eligible when she was originally sentenced to death in 1983.  (Doc. # 20, at 17.)  The sentence that matters for purposes of her claim, she says, is her 1999 commuted sentence to life imprisonment.  Citing Alabama case law emphasizing the legal import of her commuted sentence, she asserts that her *ex post facto* claim arises from the Legislature's effort to impose a harsher sentence than the one granted by Governor James.  (Doc. # 20, at 18.)

In reply, Defendants emphasize the four categories of law which Justice Chase classified as *ex post facto* laws in his separate opinion in *Calder v. Bull*, 3 U.S. 386, 390 (1798).  The Supreme Court has often referenced these categories when discussing cases presenting *ex post facto* questions:

> 1st.  Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  2nd.  Every law that aggravates a crime, or makes it greater than it was, when committed.  *3rd.  Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.*  4th.  Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Id.* (emphasis added).  The third category is the sort of *ex post facto* claim most frequently litigated before the Supreme Court, *see Lynce*, 519 U.S. at 441, and it is the one most like Plaintiff's claim.  Defendants seize upon the words "when committed," arguing that "the proper benchmark for an *ex post facto* inquiry is the rule of 'law at the time when the [criminal] act was committed.'"  (Doc. # 21, at 9 (citing *Dobbert v. Florida*, 432 U.S. 282, 292 (1977)); *see also Weaver*, 450 U.S. at 30 ("Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed *when the crime was consummated*.") (emphasis added); *Johnson v. United States*, 529 U.S. 694, 699 (2000) ("To prevail on [an] *ex post facto* claim, [the plaintiff] must show . . . that the law he challenges . . . raises the penalty from whatever the law provided *when he acted*.") (emphasis added).)[5]

While these authorities make it manifest that there is ordinarily no *ex post facto* violation when the Legislature does not retroactively increase the punishment that was annexed to a crime at the time the crime was committed, none addresses

---

[5] At this juncture, Defendants' strategy in briefing the motion to dismiss hinders optimal analysis.  The motion to dismiss presents four-and-a-half pages of argument against substantive federal constitutional claims and is a mere skeleton of a brief.  Defendants waited until filing a reply brief to develop their arguments – arguments that existed all along – which deprived Plaintiff of the opportunity to fully engage with Defendants' arguments in her opposition brief.  Perhaps Defendants were pressed for time when they filed the motion to dismiss; perhaps they believed that arguing generally at the outset and specifically at the finish would be to their advantage; perhaps there is some other explanation.  Whatever the motivation, the result is that Defendants must repeat their effort and develop their arguments again at a later stage.

the truly extraordinary situation of a legislative branch retroactively increasing a punishment declared by the executive branch in a commuted sentence.  It is noted that Justice Chase's list of *ex post facto* laws in *Calder* was not exhaustive.  *See* 3 U.S. at 391 ("All these, *and similar laws*, are manifestly unjust and oppressive.").  That Plaintiff's case is atypical does not mean that Plaintiff has not pleaded a legally cognizable claim for violation of the *Ex Post Facto* Clause.  Plaintiff has pleaded facts that show that the Act (1) applies retroactively to her, and (2) disadvantages her by increasing the punishment for her crime.  *See Lynce*, 519 U.S. at 441.   Additionally, the Act, as applied to Plaintiff, "implicate[s] the central concerns of the *Ex Post Facto* Clause:  the lack of fair notice and [lack of] governmental restraint" that accompany a retrospective increase in punishment.  *Id.* (internal quotation marks omitted).

It is true that the sentence that Defendants say that Plaintiff must receive – life imprisonment without parole – is one of the two statutory sentences Plaintiff could have received when she committed murder in 1982.  But the punishment that the Alabama Legislature annexed to the crime of first-degree murder in 1982 and that the sentencing judge was required to follow in 1983 is not legally relevant to Plaintiff's claim.  Plaintiff is serving a commuted sentence, and her commuted sentence is now the only legal sentence in the universe of possible, legal sentences for her crime.  Hence, it appears that the pertinent question must be what terms of

18

parole eligibility were annexed by Alabama law to a state defendant's commuted capital murder sentence.  The answer is plain.  In 1982, when Plaintiff committed murder, and in 1999 when Governor James commuted her sentence to life imprisonment, Alabama law made a person in her position eligible for parole after serving fifteen years of her commuted life sentence.  *See* Ala. Code § 15-22-27(b) (1975).  Life with the possibility of parole after fifteen years' imprisonment is clearly a more advantageous punishment than the new punishment set by the Act and applied by Defendants, which eliminates the possibility that Plaintiff will ever become eligible for parole consideration.

For these reasons, Plaintiff has stated a valid claim under the *Ex Post Facto* Clause.

### b.    Bill of Attainder Clause

The Constitution forbids the States from "pass[ing] any Bill of Attainder." U.S. Const. art. I, § 10.  Like the *Ex Post Facto* Clause, the Bill of Attainder Clause "is a general provision against arbitrary and tyrannical legislation over existing rights, whether of person or property."  *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 538 (1977).  The Clause "was intended . . . as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply – trial by legislature."  *United States v. Brown*, 381 U.S. 437, 442 (1965); *see also id.* at 446 ("It is the peculiar province of the legislature to

prescribe general rules for the government of society; the application of those rules to individuals in society would seem to be the duty of other departments." (quoting *Fletcher v. Peck*, 10 U.S. 87 (1810)).  The three hallmarks of a bill of attainder are (1) the infliction of punishment; (2) "a specific designation of persons or groups as subjects of the legislation," and (3) an "arbitrary deprivation" of individual rights "without notice, trial, or other hearing."  *Nixon*, 433 U.S. at 538–39.

Defendants repeat their objection that the Act is not "punitive" in nature, but the argument is conclusory in both the motion to dismiss and the reply brief.[6] Assuming that the Act is punitive, Defendants argue that the Act does not apply to named persons or to easily ascertainable members of a group, and does not "mete out punishment in a 'summary' manner."  (Doc. # 21, at 10 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994).)

Although the Act does not mention Plaintiff by name, the facts in Plaintiff's amended complaint plausibly support her allegation that she was targeted by the Legislature's amendment to § 15-22-27(b) – not only because the legislators sponsoring the bill allegedly vocalized their intent to "fix" Governor James's supposed error, but also because Plaintiff is the only person to receive a commuted sentence since 1962, and because the Legislature suspiciously made the Act

---

[6] The objection that the Act is non-punitive is likely baseless.  *See* Laurence H. Tribe, American Constitutional Law § 10-4 n.9 (2d. ed.1988) ("The concept of punishment under the bill of attainder clauses has always been a fairly broad one.").

retroactive to four months prior to the January 1999 commutation.   Hence, Defendants' objection that the law does not designate her is not well-taken.

Defendants' final objection that the amended complaint fails to allege that the Legislature meted out punishment in "summary" fashion is unsupported by any meaningful legal analysis.   The sole supportive case cited in Defendants' reply brief – *Landgraf* – only mentions bills of attainder in passing when listing the Constitution's several expressions of "the antiretroactivity principle."   511 U.S. at 266.   Hence, looking to *Landgraf* is unhelpful.   Defendants assert that the Act has not imposed punishment upon Plaintiff "without a judicial trial," citing Plaintiffs' judicial conviction for murder in Alabama state court.   (Doc. # 18, at ¶ 12.)   Plaintiff responds that, "[i]f the mere fact that a plaintiff had previously been [judicially] tried were a disqualification" to her right to bring a bill of attainder claim, then "no convicted criminal could ever complain about any subsequent unconstitutional laws that *otherwise* met the definition of a bill of attainder."   (Doc. # 20, at 23 (emphasis added).)

Because Plaintiff's case is unique, it is difficult to say that Plaintiff has failed to state a claim under the Bill of Attainder Clause, especially in the absence of well-developed arguments supporting that conclusion.   In a more typical case, a legislative body would have circumvented or contravened the judicial process of a trial or hearing before an impartial arbiter, using a statute to declare a person's

conduct criminal.  But here, Plaintiff's guilt had been properly adjudicated; only her punishment concerned the Legislature.  The court is unaware of any judicial process that may have existed to do properly what the Legislature allegedly intended to do – *i.e.*, revoke the legal possibility of Plaintiff's eligibility for parole consideration.  Yet the oddness of the nature of the Legislature's action does not negate the fact that Plaintiff has pleaded facts supporting her claim that she was arbitrarily deprived of her right to seek parole consideration in 2014 without any opportunity to contest the deprivation.

Therefore, Defendants' motion to dismiss Plaintiff's bill of attainder claim is due to be denied.

## V.  CONCLUSION

In accordance with the foregoing analysis, it is ORDERED that Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART as follows:

1.   The motion is GRANTED to the extent that Plaintiff's state-law claims in Counts One and Three of the amended complaint are DISMISSED without prejudice for lack of subject-matter jurisdiction;

2.   The motion is DENIED with respect to Defendants' motion to dismiss Plaintiff's federal-law claims pursuant to Rule 12(b)(6).

DONE this 10th day of November, 2014.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE