IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JUDITH A. NEELLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:14-cv-269-WKW-TFM |
| ) | [wo] |
| CLIFFORD WALKER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Pending before the Court are Plaintiff's *Motion to Compel* (Doc. 38, filed June 29, 2015) and *Supplement to Motion to Compel* (Doc. 45, filed July 23, 2015), and Defendants' *Response* (Docs. 46, filed July 27, 2015).

### I.   FACTUAL BACKGROUND

On April 18 1983, Plaintiff Judith A. Neelley ("Neelley" or "Plaintiff") was sentenced to death. *See* Doc. 1 at 3. On January 15, 1999, former State of Alabama Governor Fob James ("Governor James") commuted Neelley's sentence to a life sentence. *Id.* Governor James' letter to the Alabama Supreme Court omitted an explicit order as to whether the life sentence was to be with or without possibility of parole, and was subsequently reviewed by the Alabama Attorney General. *See* Doc. 1 at 5. The Alabama Attorney General stated the determination of whether the commuted sentence would be deemed with or without possibility of parole is based on the "specific order of the Governor." Due to Governor James' omission of specific language to that effect, the Alabama Board of Pardons and Paroles ("Parole Board") informed Neelley that she

would be eligible for parole consideration on or about January 15, 2014. *See* Doc. 1 at 6. On October 23, 2001, Neelley filed a declaratory judgment action seeking a determination as to her immediate eligibility of parole due to the fact that she had already served nineteen (19) years in prison, sixteen (16) of those years on Alabama's death row. *Id.* On July 22, 2002, a Montgomery County Circuit Court judge held that the fifteen (15) year parole period did not begin running until Governor James commuted her sentence on January 15, 1999. *Id.*

On June 18, 2003, the Alabama Legislature passed Act 2003-300 which amended Section 15-22-27(b) of the Code of Alabama to include that "[a]ny person whose sentence to death has been commuted by the Governor shall not be eligible for a parole." *See* Doc. 1 at 7. Act 2003-300 provided only one exception, where the person whose death sentence has been commuted can be eligible for parole if "sufficient evidence is presented to the Board of Pardons and Paroles to satisfy it that the person was innocent of the crime for which he or she was convicted, the board votes unanimously to grant the person" parole, and that "the Governor concurs in and approves the granting." *Id.* (quoting ALA. CODE § 15-22-27(d)). Further, Section 3 of Act 2003-300 provided that the "operation" of the Act shall be retroactive to September 1, 1998, approximately four and a half months prior to Governor James' commutation of Neelley's death sentence. *Id.* Accordingly, the retroactivity of the Act converted Neelley's sentence from life imprisonment to life imprisonment without the possibility of parole. *See* Doc. 1 at 8. In January of 2014, after serving fifteen (15) years from the date of Governor James'

commutation, Neelley requested a parole consideration hearing. *See* Doc. 1 at 9. On March 31, 2014, upon request of the Parole Board, the Alabama Attorney General issued an advisory opinion stating that Neelley was not eligible for parole consideration due to the retroactivity of Act 2003-300. *Id.*

Neelley asserts that she is the only person in Alabama to have a death sentence commuted since 1962. More specifically, Neelley asserts that she is the only person whose death sentence was commuted between September 1, 1998 and September 1, 2003. Thus, the "Legislature's retroactive application of Act 2003-30 was directed at and affected only one person – Neelley." *See* Doc. 1 at 8. Plaintiff asserts that the sponsor and many supporters of the Act expressed that it was "intended to 'fix' Governor James' commutation of Neelley's death and even referred to it as 'Neelley's law.'" *Id.* Neelley claims that "[t]he retroactivity of Act No. 2003-30 to Neelley is unconstitutional under both the United States and Alabama Constitutions." *See* Doc. 1 at 9.

## II.    DISCUSSION

Discovery is not limited to that information which is admissible in court, but rather discoverable information is "relevant information" which "appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). The Court recognizes its duty to balance production of "relevant information" which is "reasonably calculated to lead to the discovery of admissible evidence" with concerns that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R.

CIV. P. 26(b)(1) and 26(b)(2)(C)(i).

Neelley moves this Court to compel responses to requests for admission, interrogatories, and requests for production. *See* Doc. 38. Plaintiff's motion is seeking several documents contained in her parole file including provisions of the Code of Alabama, copies of the Formal Opinions publicly issued by the Alabama Attorney General, copies of published newspaper articles, and copies of letters exchanged between Neelley's counsel and the Parole Board and between Neelley and the Parole Board. *See* Doc. 38 at 3. Plaintiff asserts that she is entitled to this information because Defendants have asserted and pursued a defense based upon the statute of limitations, as well as heavily relied on it in Defendants' *Motion for Summary Judgment* (Doc. 41). *See* Docs. 38, 45. Neelley requests this discovery, specifically to gather information on notice and correspondence which discuss Neelley's eligibility for parole. *See* Doc. 38 at 2. Further, Neelley asserts that Defendants have already turned over public records contained in her parole file including a January 21, 2014 Request for Attorney General's Opinion that tends to establish Defendants' own confusion as to whether Act 2003-30 applied to Neelley, yet they argue that Neelley knew or should have known as early as 2003 that the Act barred her from parole consideration. *See* Doc. 45 at 2-3.

Defendants Clifford Walker ("Walker"), William W. Wynne, Jr. ("Wynne"), and Robert P. Longshore ("Longshore") (collectively "Defendants") assert that pursuant to Alabama law, the contents of Neelley's parole file are privileged. Section 15-22-36(b) of the Code of Alabama provides that:

> Each member of the Board of Pardons and Paroles favoring a pardon, parole, remission of a fine or forfeiture, or restoration of civil and political rights shall enter in the file his or her reasons in detail, which entry and the order shall be public records, but *all other portions of the file shall be privileged.*

*See* Doc. 46 at 3 (emphasis added).  Defendants cite to an Alabama Supreme Court case and an Eleventh Circuit case that have upheld the parole file privilege set forth in Section 15-22-36(b) of the Code of Alabama.  First, Defendants cite to *Ex Parte Alabama Board of Pardons & Paroles*, in which the Alabama Supreme Court held that Section 15-22-36(b) "clearly and unambiguously establishes an absolute privilege that the Board is legally bound to obey and the . . . court is under a duty to uphold."  *See* Doc. 46 at 5 (quoting 814 So. 2d 870, 873 (Ala. 2001)).  Defendants also cite to *Porter v. Ray*, where the Eleventh Circuit "upheld the district court's denial of the appellants' request for *in camera* inspection of their parole files" under a similar statute pursuant to Georgia law.  461 F.3d 1315, 1324 (11th Cir. 2006).  Defendants also assert that some of the documents are also protected under other doctrines including attorney work product, attorney-client privilege, and federal executive/official-information/deliberative-process privilege.

While well taken, the facts of the cases cited by Defendants are easily distinguishable to the facts before this Court.  In *Ex Parte Alabama Board of Pardons & Paroles*, the Alabama Supreme Court was reviewing the lower court's ruling on whether notifications and correspondence made between the Parole Board and the victim(s) of the crime, not correspondence between the Parole Board and the prisoner herself.  814 So. 2d at 871.  The quote that was shortened by Defendants reads in its entirety:

> [a] plain reading of the statute indicates that the Legislature created an absolute privilege to provide individuals and entities an unfettered opportunity to provide information to the Board, without exposing the individuals and entities to public scrutiny and potential retaliation.

*Ex parte Alabama Bd. of Pardons & Paroles*, 814 So. 2d at 872. Based upon representations made by Plaintiff's counsel, as well as the Court's review of the requests, it is clear that Plaintiff is not seeking any documents that would have any potential for exposing the identities or statements made by any victims, witnesses, etc.

Similarly, in *Porter v. Ray*, the Eleventh Circuit was reviewing the district court's denial of a request for an *in camera* review of the Georgia Board of Pardons & Paroles' parole files, statistics, and other documents the plaintiffs alleged were used in applying an *ex post facto* policy. The Eleventh Circuit ultimately held that the district court did not abuse its discretion in denying the *in camera* review because the plaintiffs failed to meet their burden of overcoming the claim of confidentiality, and stated:

> [. . .] even though *we do not blindly accept the Board's claim of confidentiality*, we find that the appellants' allegations are insufficient to meet their burden when requesting discovery that the State of Georgia has deemed confidential.

*Porter*, 461 F.3d at 1324 (citing *McGoy v. Ray,* 164 Fed. App'x 876, 878 (11th Cir.2006)) (emphasis added). The Eleventh Circuit clearly stated that even though state law provided that the parole files were confidential, that they would not "blindly accept" a claim of confidentiality without further analysis. *Id.*

Here, during oral argument, Plaintiff narrowed her requests to correspondence between the Parole Board and her and/or her counsel, and the publisher as well as the

corresponding dates of newspaper articles contained in Neelley's parole file.  First, with regard to the correspondence between the Parole Board and Neelley's counsel, Mr. Barry Ragsdale ("Mr. Ragsdale") informed the Court that he has not served as counsel for Neelley since her sentence was commuted in 1999.  Mr. Ragsdale said the attorney who represented Neelley in the interim, and is also co-counsel in this case, has represented to Mr. Ragsdale that he no longer has copies of all of the correspondence.  Similarly, with regard to correspondence between the Parole Board and Neelley, Mr. Ragsdale asserted that prisoners are limited in what they are allowed to keep in their cells, and thus Neelley was not able to keep all correspondence between her and the Parole Board.  Mr. Ragsdale represented as an officer of the Court that he only has possession of five (5) of the eleven (11) correspondence listed on the privilege log, and that he only wants copies of the correspondence which he does not already have.

     The correspondence requested clearly do not raise the same concerns as those raised in the case law cited in support of the privilege, or those cited in the legislative intent of Section 15-22-36(b) of the Code of Alabama.  The correspondence are of the nature that Plaintiff and/or her counsel drafted them and sent them to the Parole Board, or the Parole Board voluntarily sent a copy to Plaintiff and/or her counsel.  While the Court recognizes the parole file privilege, it must also take into account that the correspondence cannot be obtained in another manner and that the documents sought were created by the Parole Board with the intent that they be viewed by Plaintiff and/or her counsel or created by Neelley and/or her counsel to be viewed by the Parole Board.  Indeed, these items

were sent to Neelley and/or her counsel by the Parole Board, or sent by Neelley and/or her counsel to the Parole Board. Correspondence sent between Neelley and/or her counsel and the Parole Board do not implicate the need that the privilege is meant to address. Therefore, the Court finds that Defendants shall produce the requested correspondence between the Parole Board and Neelley and/or her counsel. However, Defendants shall only produce those documents that are not already in Plaintiff's possession, and shall redact any writings or markings made by the Parole Board or its counsel that were not on the document when sent to Plaintiff or her counsel, or sent by Plaintiff or her counsel.

     Neelley also requests the name of the publication and the corresponding dates of publication for any newspaper articles contained in her parole file. Neelley asserts that Defendants have pursued a defense based upon the statute of limitations, as well as heavily relied on it in Defendants' *Motion for Summary Judgment* (Doc. 41), thus, she must gather information related to the notice element. *See* Docs. 38, 45. Neelley asserts that Defendants have cited to several newspaper articles in their motion for summary judgment; however, they did not attach them as exhibits or set forth any identifying information. Defendants aver that as a whole, the collection of newspaper clippings speak to the Parole Board's decision-making process by disclosing all of the news related media used in making their decisions related to Neelley's parole consideration. While the Court generally agrees with Defendants' stance, Defendants cite to several of the articles in their motion for summary judgment. While the Court is not making any express

finding that Defendants have waived the parole file privilege, to the extent that Defendants have cited to the documents in their motion for summary judgment, in the interest of fairness, the Plaintiff is entitled a copy of those articles in order to properly defend herself against a possible summary judgment.  Thus, to the extent Defendants cite to any newspaper articles in their *Motion for Summary Judgment* (Doc. 41), the Defendants shall produce the publisher and corresponding date to only those articles cited.  Additionally, if any of the articles are clippings that do not identify the publisher and/or date, Defendants shall produce a copy of that article, subject to redactions of any notes or markings made by the Parole Board or their counsel.

Within seven (7) days of the date of this Order, the parties shall submit a joint proposed protective order that will govern the release of these documents.

### III.  CONCLUSION

Accordingly, upon consideration of the motions, for the reasons as stated, and for good cause, it is **ORDERED** as follows:

(1)  Plaintiff's *Motion to Compel* (Doc. 38) be and is hereby **GRANTED**; and

(2) The parties have until **on or before October 29, 2015** to submit a joint proposed protective order to govern the documents to be produced.

DONE this 22nd day of October, 2015.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE